FILED
2011 Apr-20  PM 03:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **EVERETT BRINKLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CV-09-BE-1395-M** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

On March 27, 2006, the claimant, Everett Brinkley, filed for supplemental security

income benefits under Title XVI of the Social Security Act. (R. 15).  The claimant alleged

disability beginning October 28, 2004 based on gout, bipolar disorder, depression, migraine

headaches, drug and alcohol abuse, hypertension and degenerative arthritis. (R. 15 & 17; doc. 14,

at 1).  The Commissioner denied the claim both initially and on reconsideration.  The claimant

filed a request for a hearing before an Administrative Law Judge, and the hearing was held on

February 5, 2008. (R. 15).  In a decision issued on September 30, 2008, the ALJ found that the

claimant was not disabled as defined by the Social Security Act and, thus, he was ineligible for

supplemental security income. (R. 22).

The Appeals Council denied review of the ALJ's decision on June 17,  2009, and the

ALJ's decision became the final decision of the Commissioner of the Social Security

1

Administration. (R. 1).

The claimant has exhausted all of his administrative remedies, and this court has

jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons stated below, this

court will reverse and remand the decision of the Commissioner, and grant the motion to remand

under sentence six..

## II.  ISSUES PRESENTED[1]

I.  Whether this court should remand this case to the Appeals Council pursuant to sentence four
because the Appeals Council erred in denying review to consider new evidence submitted.

II. Whether this court should remand this case pursuant to sentence six because of new evidence
presented to the district court

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited.  This court must

affirm the Commissioner's decision if the Commissioner applied the correct legal standards and

if the factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g);

*Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999

(11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions,

including determination of the proper standards to be applied in evaluating claims."  *Walker*, 826

F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo*.

The court will affirm those factual determinations that are supported by substantial evidence.

"Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a

---

[1] Claimant presented additional issues, but in light of this court's ruling on these two
issues, the court will not address the remaining ones.

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but must view the record in its entirety and take account of the evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432 (d)(1)(A) (2004). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed;
> (2) Is the person's impairment severe;
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1;
> (4) Is the person unable to perform his or her former occupation;
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to finding a disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

The Appeals Council must consider new, material, and chronologically relevant evidence

and must review the case if "the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).  Evidence is "material" when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result."  *Milano v. Bowen,* 809 F.2d 763, 766 (11th Cir. 1987).  To be "chronologically relevant," the material must relate to the period on or before the date of the ALJ's hearing decision.  20 C.F.R. § 404.970(b).

Section 405(g) of 42 U.S.C. permits a district court to remand a Social Security matter to the Commissioner.  Where evidence is submitted for the first time at the district court level, the federal court has the power pursuant to the sixth sentence of Section 405(g) "to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence in a prior proceeding.'" *Ingram*, 496 F.3d at 1261 (quoting section 405(g) sentence 6.  The Eleventh Circuit has found that evaluation of motions to remand under sentence six is appropriate to consider "new evidence that the Commissioner did not have an opportunity to consider;" that is, evidence never submitted at any level and also including evidence that was not considered by the Appeals Council because it was untimely submitted. *Ingram*, 496 F.3d at 1269.  Evidence considered under sentence six cannot include evidence considered by the Appeals Council and incorporated into the administrative record.  *Id.*

## V. FACTS

The claimant completed school through the tenth grade and was forty-two years old at the time of the administrative hearing. (R. 41, 45).  His past relevant work experience was as a

laborer and furniture mover. (R. 46).  The claimant alleges that he is currently unable to work because of crippling arthritis, swelling of his ankles, fingers and knees, severe gout, and depression. (R. 47).

Claimant's treating physician, Christian Donahue, M.D., treated claimant from April 2004 to January 2005 for hypertension, diabetes, gout and arthritis. (R. 265).  His notes revealed that the claimant's arthritis and gout pain were significant at times, and claimant had mood issues including possibly being bipolar. (R. 265).

In May 2006, Henry Born, M.D., a family practitioner in Gadsden, Alabama, completed a consultative examination of the claimant. (R. 302).  After a physical examination, Dr. Born found that claimant's muscle strength was intact in his upper and lower extremities. (R. 303).  Claimant's gait was slowed, and in general, the claimant had pain in his bones and joints when put through a general range of motion. (R. 304).  Dr. Born noted that the claimant's neck, shoulders, elbows, wrists, hands, and fingers moved pretty well. (R. 304).  Claimant complained of pain, tenderness, and swelling in his knees and ankles, but Dr. Born noted no noticeable swelling during the examination. (R. 304).  Dr. Born opined that the claimant's biggest problems were in the realm of psychiatry, because of possible bipolar disorder, possible mental retardation, and possible ADHD. (R. 304).  Dr. Born also noted that the claimant had high blood pressure, hypertension and a history of gout. (R. 304).

Also in May 2006, claimant visited June Nichols, Psy.D., for a consultative examination at the referral of Disability Determination Services. (R. 298).  Claimant reported agitation, fatigue, and emotional instability during the examination. (R. 298).  Claimant also gave an extensive history of alcohol dependence and admitted to being jailed for writing fraudulent

checks. (R. 299).  Claimant described his history of alcohol abuse and initially stated he had

stopped drinking alcohol a year ago, but then later reported he continues to drink and is "trying to

quit." (R. 299).  Ms. Nichols observed that the claimant had a neat and clean appearance but was

hostile and agitated. (R. 299).   Ms. Nichols opined that claimant had good concentration,

memory, and was oriented to person, place and time; however, claimant had poor knowledge of

current events, poor insight, and fair judgment. (R. 300).  Ms. Nichols diagnosed claimant with

symptoms of depression, inability to relate interpersonally, and inability to withstand the

pressures of everyday work.  Ms. Nichols further opined that with treatment for his symptoms of

depression, he would likely improve within a year. (R. 301).

In a Psychiatric Review Technique assessment dated June 6, 2006, Gordon Rankart,

Psy.D., an agency disability consultant, assessed whether claimant met listings 12.04 (affective

disorders) and 12.09 (substance addiction disorders). He did not assess claimant under 12.05

(mental retardation).  Although he made no specific findings under 12.04, he gave a diagnosis of

nonspecific depressive disorder, and under 12.09, he indicated that claimant suffered from

alcohol dependence in remission.  Rating functional mental limitations for "B" criteria, he  found

mild restrictions in daily activities; moderate difficulties in maintaining social functioning and in

concentration, persistence, and pace; and no episodes of decompensation.  He further found no

evidence of "C" criteria.  (R. 308-321).  In the accompanying Mental RFC Assessment, Rankart

found claimant's general memory and understanding not significantly limited but his ability to

remember detailed instructions moderately limited. (R. 322).  He rated claimant's concentration

and persistence between moderately limited and not significantly limited.  His social interaction

falls between moderately limited and not significantly limited.  Claimant showed no signs of

limitation in adaptation during work. (R. 323).  Rankart's notes reflect claimant's complaints of depression, trouble sleeping, inability to complete tasks, "problems being around other people," a 2004 diagnosis of bi-polar disorder with accompanying prescription of oxycontin.  The notes also record information from agency doctors' examinations.  For educational history, Rankart states that claimant has a tenth grade education, and that he had not attended special education classes. (R. 320).

In September 2006, claimant's right wrist was x-rayed at Riverview Regional Medical Center. (R. 333).  Degenerative arthritis was found but no fracture abnormality was identified. (R. 333).  Claimant was also examined at the Quality of Life Health Services, Inc, and his clinical Record states that he complained of blurry vision and dizziness associated with high blood pressure. (R. 326).

In an examination by CED Mental Health Center in February 2007, claimant was described as very angry, anti-social and suicidal but "committed to treatment." (R. 409).  The diagnostic impression of claimant included bipolar I depression and alcohol dependence. (R. 410).  The examiner noted claimant's low self esteem, lack of social support, and frustration with his alcohol dependence that has caused him to lose his children, past girlfriends, and friends. (R. 406).

Claimant was hospitalized in March 2007 for treatment of a flare-up of gout in his left knee, ankle and elbow. (R. 336).  On March 18, 2007, he received emergency room treatment for increased swelling and "intolerable pain."  He was then admitted for x-rays, the administration of IV pain medicine , and also IV antibiotics until cultures could identify the problem. (R. 336).  On that same date, an orthopedic specialist, William Haller, Jr., M.D., stated that claimant had pain

7

but no warmth or erythema (redness or rash) noted and joints had only mild joint effusion (excess fluid) in the left ankle and left elbow with good range of motion. (R. 337).

In a follow up April 2007 examination, Dr. Haller questioned patient's medication compliance.  Claimant reported that he could not afford his hypertension medicine, but he wanted a prescription for more pain medicine. (R. 341).  Dr. Haller refused his request and gave him the option of increasing his dosage of Colchincine for control of his gout. (R. 341).

Claimant was admitted to the emergency room again in November 2007 for pain and swelling in his left ankle and knee. (R. 411).  He was treated for gout and released with a follow-up appointment scheduled.

*ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 9).  At the hearing on February 5, 2008, the ALJ listened to testimony from the claimant, claimant's girlfriend, and a vocational expert (VE).  Claimant stated that he was currently forty-two years old, had completed school through the tenth grade, and does not have a current drivers license. (R. 43, 45).

Claimant resides in a one story home with his mother, who is disabled. (R. 41).  Claimant explained that his girlfriend of about nine years helps take care of him, although she does not live with him. (R. 42, 44).  She is on social security benefits, but when asked, claimant could not at first recall her health problem until later remembering that it was staph infection. (R. 44).  Claimant stated that he has two children, but he does not communicate with them. (R. 45).  His children and their mother live in North Carolina.

Claimant admitted that he spent six months in jail for writing fraudulent checks. (R. 46).

He testified that his last date of employment occurred in 1993 or 1994 and that he has not been able to work because of crippling arthritis and swelling of his ankles and knees. (R. 47). Claimant stated that although he went to the tenth grade, tests have revealed that he reads at a second grade level. (R. 47).  Claimant claimed that he cannot read or write and that he took special education classes in school. (R. 51)

When questioned about hospital visits, claimant stated that he spent four days in the hospital because of fluid in his leg. (R. 47).  His attorney clarified that the hospital visit occurred in April 2007 and another occurred in July 2007. (R. 47). Claimant opined that the visits to the hospital do not help, and he just "suffers with it." (R. 48).  Claimant described his inability to work because of ankle, knee and finger swelling and stiffness as well as high blood pressure and migraine headaches. (R. 48).  Claimant does not have significant problems with exposure to extreme temperatures, but he stated that the cold bothers him. (R. 49).

Claimant described that to keep extreme swelling down, he elevates his legs, uses a hot compress, and takes medication. (R. 49).  He testified that this type of extreme swelling happens two to three times a week. (R. 50).  Both of his knees have been drained before, and claimant's hands are often puffy and difficult to use. (R. 50).  He sometimes has trouble walking because of swelling and pain, and he is most comfortable lying down. (R. 52).

Claimant stated that his high blood pressure causes migraine headaches three to four times a week. (R. 52).  He has received prescriptions for high blood pressure medication, but he admitted that he does not take it because he cannot afford it. (R. 52).  According to claimant, his pain interferes with his ability to sleep and concentrate on tasks. (R. 53).  He also described that his nerves cause him to get shaky, dizzy, and upset.  He admitted that he has hurt himself on

occasion by self cutting and has visited a mental health center. (R. 54).

The claimant's girlfriend, Cindy Delise, testified that she sees the claimant on a daily

basis and that his pain is very intense. (R. 56).  She stated that walking for five to ten minutes

causes the claimant to have to sit, and then his ankles swell when he is seated. (R. 56).  She

described that his pain is so severe that he often cries through the night, and she opined that even

if he tried to work, his mental status would prevent him from sustaining employment. (R. 57).

The ALJ then examined Dr. David Head, the VE. (R. 58).  The ALJ presented Dr. Head

with a hypothetical person with certain limitations and impairment:

> If I should find the Claimant capable of lifting objects weighing up to 15
> pounds, he could sit for as much as six out of eight hours per day and stand and
> walk for four out of eight hours per day but would require a sit/stand option.  He
> would be precluded from any work around unprotected heights, he could not be
> exposed to extremes of cold.  He would be precluded from pushing or pulling of
> leg controls as well as repetitive overhead reaching and lifting .  He would be
> limited to those jobs in which contact with the general public and coworkers is
> brief, infrequent, and casual, and he would be limited to jobs that involve the
> completion of only non-complex job tasks.  This would preclude any of the past
> work you've identified, but would there be other jobs that could be performed,
> and if so, would you identify representative examples.

(R. 59).  The VE responded that approximately 4,800 jobs did exist in north central Alabama

fitting that description; they are sedentary level jobs with a sit-stand option that include "bench

and table work, assembly, wrapping and packaging, inspecting, sorting, and collating."  (R. 59).

Next, the ALJ asked Dr. Head whether claimant could return to past work or perform any

other work if his testimony was found fully credible and supported by the Record.  Dr. Head

opined that, accepting the claimant's testimony as true, he would not be able to return to his past

work or perform new work, the primary reason being the extent of his alleged swelling and pain in

his feet, ankles and hands and his alleged need to lie down and elevate his feet two to three times

a week and more than an hour or two during each episode. (R. 60).  The VE noted that claimant also complained of migraines but the VE did not know the frequency or duration of those.  The VE also testified that an unacceptable degree of absenteeism was more than 20 working days per year or more than three days in any month. (R. 60).

*Post-hearing Treatment*

Gadsden Regional Medical Center records indicate a visit on March 15, 2008 after an accident occurring when a four-wheel recreational vehicle he was driving rolled over on him. Claimant rated pain as a 10/10 located in his neck, chest, upper back, and left upper arm. However, the physician described claimant as able to ambulate independently and able to  perform all activities of daily living without assistance, and the records reflected that no swelling existed and that the claimant denied musculoskeletal pain and had full range of motion. (R. 427).  The x-rays revealed moderate to severe degenerative changes at the C5 interspace with milder spondylitic disease noted at C4 and C6.  Chest x-rays showed no evidence of disease.  The records show a clinical impression after test results of a contusion to the chest wall and acute cervical strain.  (R. 424).

Claimant was readmitted to the hospital a few days later beginning on March 17, 2008 and Dr. Robert Rausch, a radiologist in Florence, Alabama,  performed a consultative exam on him while he was hospitalized.  Claimant listed the accident as resulting from a fall down the steps a few days before and not a four-wheel drive recreational vehicle.  Dr. Rausch's diagnosis was right rib fracture and degenerative arthritic changes of the spine.

*ALJ Decision*

In a decision dated September 30, 2008, the ALJ found the claimant not disabled. (R. 22).

The ALJ found that the claimant had not engaged in substantial gainful activity since March 27, 2006. (R. 17).  The ALJ determined that the claimant's conditions of gout, bipolar disorder, drug and alcohol abuse, hypertension and degenerative arthritis of the right wrist were severe impairments because they had more than a minimal impact on his ability to perform work. (R. 17). The ALJ further found that none of the claimant's impairments taken individually or in combination met the Listing of Impairments. (R. 18).

The ALJ found that the claimant has the residual functional capacity (RFC) to lift or carry up to five pounds on a frequent basis and up to fifteen pounds on an occasional basis. (R. 19).  He can stand and/or walk for a total of up to two hours per eight-hour work day, and he should have a sit or stand option at work. (R. 19).  Claimant's limitations include avoiding prolonged use of foot controls, repetitive overhead reaching or exposure to unprotected heights or extreme cold. (R. 19). He should be restricted to simple tasks not requiring more than brief and casual contact with others. (R. 19).

In making the finding, the ALJ followed the pain standard analysis process in which he first determined whether any underlying medically determinable physical or mental impairments could reasonably be expected to produce the claimant's symptoms. (R. 20).  The ALJ noted that the claimant's arthritis and swelling that affect his feet, legs and knees cause pain when standing for too long.  After considering the evidence, the ALJ concluded that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (R. 20).

Second, the ALJ evaluated the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work

activities. (R. 20).  The ALJ observed that the claimant's gout appeared to have been made worse with noncompliance with prescribed medication. (R. 20).  He noted that the claimant's exacerbations of gout occurred relatively sporadically, and that the claimant's functioning was good between exacerbations.  The ALJ took into consideration that the claimant's history of writing bad checks is generally inconsistent with credibility, and that the claimant gave "conflicting and apparently untruthful history" to Dr. Nichols regarding his substance abuse. (R. 20).  Further, the ALJ found that the claimant's statements about daily capabilities were not credible to the extent that they were inconsistent with the RFC.

The ALJ found no objective medical evidence to support claimant's disability claim.  No treating source expressed an opinion regarding the claimant's functional capacity or the ultimate issue of disability. (R. 20).  Dr. Born observed that the claimant had normal strength and dexterity with a good range of motion.  Dr. Nichols observed that claimant's memory and concentration were intact and that his global assessment of functioning was 68.  (R. 21).  The ALJ noted that the claimant's history of drug and alcohol abuse does not affect his RFC.

The ALJ concluded, after consideration of all evidence, that the claimant's medically determinable impairment could easily cause the alleged symptoms, but the claimant's statements concerning intensity, persistence and limiting effects of these symptoms were not credible. (R. 21).  Referring to the VE's opinion, the ALJ found that although the claimant is unable to perform past relevant work, jobs exist in significant numbers in the national economy that the claimant can perform. (R. 21).  Therefore, the ALJ concluded that the claimant was not disabled as defined by the Social Security Act. (R. 22).

*Request for Appeals Council Review*

Claimant filed a request for review of the hearing decision on October 2, 2008.  (R. 9).

The Administration responded to claimant on October 20, 2008 and gave claimant a deadline of

25 days, November 14, 2008, to submit additional information, advising that "[w]e will not allow

more time to send information except for very good reasons."  (R. 5).

*Newly Submitted Evidence to the Appeals Council*

The claimant submitted to the Appeals Council new evidence not previously submitted to

the ALJ.  On November 14, 2008, claimant's attorney faxed a letter brief to the Appeals Council

that purported, among other things, to summarize information from claimant's evaluation by Dr.

David Wilson of 10/20/08.  Attached to the letter brief was apparently Dr. Wilson's psychological

evaluation of claimant. (R. 490-496).  Dr. David R. Wilson, Ph.D., examined claimant at the

request of claimant's new counsel on October 20, 2008. (R. 498).  Dr. Wilson discussed extensive

medical, psychological, and personal history with the claimant.  Dr. Wilson observed that the

claimant's insight and judgment were poor, but he was cooperative, compliant, and gave good

effort in the examination.  Claimant's WAIS III (Wechsler Adult Intelligence Scale) resulted in a

full scale IQ of 63 and indicated that his cognitive level was in the mildly retarded range and that

he had significant cognitive deficits. (R. 502).  Dr. Wilson diagnosed claimant with severe

recurrent major depression, generalized anxiety disorder, history of alcohol abuse, mild mental

retardation, severe medical problems, inadequate access to necessary medical or psychiatric care,

and a GAF of 45. (R. 504).

On March 6, 2009, three months after the deadline, claimant's counsel sent a letter to the

Appeals Council attaching medical records from the Gadsden Regional Medical Center dated

14

12/9/07-1/10/09.  (R. 549-550).   The Medical Center records submitted reflect that Claimant was admitted to Gadsden Regional Medical center in April of 2008 for broken ribs and shoulder injury, which were caused when he fell down a flight of stairs.  (R. 588).  In  December of 2008, claimant complained of severe foot pain.  The physician found no definite fracture and mild chronic degenerative changes. (R. 573).

Hospital records for the period of February 19, 2009 to March 11, 2009, which counsel attached to an April 27, 2009 letter to the Appeals Council, reflect that claimant was treated for post-surgical pain in his right knee after a fracture of his patella caused by swelling in the soft tissue around the knee joint. (R. 516-547).  Claimant rated his pain as severe.  Emergency medical reports submitted from Gadsden Regional Medical center described patient as demonstrating "normal behavior appropriate for age and situation; patient... is able to ambulate independently, and can perform all activities of daily living without assistance. Patient demonstrates the ability and willingness to learn." (R. 593).

The March 6, 2009 letter from counsel to the Appeals Council also attached records from the CED Mental Health Center dated 1/11/07-2/21/07. (R. 552-649). The January 07 record indicates that he did not keep his appointment because of illness.  The February 07 record reflect a diagnosis of "Axis I Bipolar I depressed" with a secondary diagnosis of alcohol dependence and an Axis II diagnosis of anti-social personality disorder; Axis III diagnostic impression of hypertension and gout.  (R. 558).  The notes mention self-mutilation and state that claimant is "very angry and wants to kill himself to escape the frustration, but is committed to treatment."  (R. 557).

On March 16, 2009, claimant's counsel sent a letter to the Appeals Council attaching

records of CED Mental Health Clinic dated 2/26/07 - 2/14/08.  Claimant also submitted additional

medical records from CED Mental Health Center dated January 11, 2007 in which claimant

complained of being moody and experiencing highs and lows. (R. 552).  Claimant reported to

CED that he had taken special education classes and that he had learning disabilities.  He admitted

alcohol dependence and prior drug history. (R. 556).  The CED therapist gave a diagnostic

impression that claimant suffered from bipolar I disorder and alcohol dependence.

On March 17, 2009, claimant's counsel sent a 5-page fax to the Appeals Council.  The

four-pages attached to the fax cover letter were (1) a one-page letter purporting to attach medical

records dated 3/11/09 from Dr. Haller and a disability questionnaire completed by Dr. Haller on

that date; (2) a two-page disability questionnaire signed by Dr. Haller and dated 3/11/09; and (3) a

one-page document indicating that a fax was sent at 8:43 a.m. on 3/17/09.  The Record does not

reflect that Dr. Haller's medical records, other than the questionnaire itself, were actually sent or

received.  The disability questionnaire reflects that Dr. Haller treated claimant during the period

from April of 2007 to March of 2009, including eleven office visits and multiple surgeries.   Dr.

Haller opines that the claimant became disabled as of January 2, 2009 because of multiple

surgeries resulting in his inability to bear weight "on his right lower extremity for an

indeterminate amount of time," that his disability is expected to last approximately eighteen

months, and that his medications cause drowsiness that could preclude employment.  (R. 652).

On April 27, 2009, almost five months after the submission deadline, counsel sent a two-

page letter to the Appeals Council, attaching over 30 pages of records from the Gadsden Regional

Medical Center dated 2/19/09-3/11/09.  (R. 514-15 (letter); 548 (fax); 516-47 (records)).

On May 13, 2009, over five months after the deadline to submit additional documents to

the Appeals Council, claimant's counsel sent a fax to the appeals council attaching an eleven-page

fax with a letter stating that records were attached for "Quality of Life - JW Stewart

Neighborhood 5/31/06, 6/9/06, 1/20/09."   The 2006 records are difficult to read, but reflect

complaints of head ache, right wrist swelling, and gout with a history of depression.  (R. 510-13).

The 2009 records show the chief complaints to be hypertension and chest pain but also note his

chronic gouty arthropathy, uncomplicated diabetes under control, chronic bi-polar affect, lack of

edema, chronic unspecified depression; and history of fractures to the patella and carpal bone.

On May 29, 2009, approximately six months after the deadline, claimant's counsel faxed

an eleven-page document to the Appeals Council, including a letter and medical records from

Gadsden Orthopaedic Associates/Dr. Haller dated 3/16/09 -5/7/09[2].

On June 2, 2009, claimant's counsel sent a six-page fax to the Appeals Council attaching a

letter which in turn *purports to include* medical records from CED Mental Health clinic dated

4/27/09 - 5/19/09.

*Appeals Council Decision*

On June 17, 2009, the Appeals Council denied claimant's request for review.  It stated that

it considered additional evidence listed on the enclosed order "but found that this information

does not provide a basis for changing the Administrative Law Judge's decision." (R. 1-2).  The

additional evidence listed on the order included the following exhibits:

---

[2]Because the Administrative Record does not include the May 29, 2009 and June 2, 2009 submissions, the court bases this information on counsel's attachments to the first motion to remand.  The records of Gadsden Orthopaedic Associates dated 3/16/09-5/7/09 were included in the documents attached to the motion as document 8-8.  Although document 8-9 refers to the medical records for CED Mental Health Center dated 4/27/09-5/19/09 documents and purports to attach them, document 8-9 does not include them, and the court is unable to find them elsewhere, either in the Administrative Record or in the district court Record.

17

(1) Quality of Life - JW Stewart Neighborhood dated 5/31/06, 6/9/06 and 1/20/09 (R. 505-513).
(2) Gadsden Regional Medical Center dated February 19, 2009 to March 11, 2009 (R. 514-548);
(3) Social Security Disability Questionnaire dated March 11, 2009 form Dr. Haller. (R. 651-52);
(4) Record from CED Mental Health Center and Gadsden Regional Medical Center dated 1/11/07 to 1/10/09 (R. 552-649);
(5) Psychological Evaluation dated October 20, 2008 from David R. Wilson, Ph.D. (R. 490-504);
(6) Records dated 2/26/07 to 2/14/08 from CED Mental Health Center (R. 486-488).

The additional evidence listed in the letter and included in the Administrative Record did *not* include the following: the November 14, 2008 letter brief (but *did* include Dr. Wilson's evaluation attached to it);  Dr. Haller's medical records dated March 11, 2009[3] (other than the disability questionnaire he signed); the May 29, 2009 letter with attached  March 16-May 7, 2009 medical records of Gadsden Orthopedic Associates; the June 2, 2009 letter purporting to attach April and May 2009 mental health clinic records; the April and May 2009 mental health clinic records.

*Separate Social Security Action*

Claimant filed a separate action for Supplemental Security Income asserting a disability onset date of October 1, 2008.  On September 8, 2009, the ALJ in that case found in favor of claimant, determining that he has been disabled beginning October 1, 2008. (Doc. 15).

*Current Appeal in Federal District Court*

On July 13, 2009, the claimant filed the current appeal in this court.  (Doc. 1).  On March 11, 2010, the claimant filed a motion to remand with this court, requesting that this court remand the case to the Appeals Council, apparently under sentence four, for consideration of documents

---

[3] The March 2009 transmittal letter refers to March 11, 2009  "medical records" but appears to reference Dr. Haller's March 11, 2009 Social Security Disability Questionnaire (doc. 8-5).

claimant sent to the Appeals Council.   Attached to that motion were the following exhibits: a fax information sheet dated 11/14/08 from counsel and directed to the Appeals Council attaching a fifteen page letter brief (doc. 8-1 & 8-2); a letter dated March 16, 2009 from counsel to the Appeals Council and purporting to enclose claimant's records from CED Mental Health Center dated 2/26/07- 2/14/08 but without the attached documents (doc. 8-3); a fax transmission information sheet denoting five pages faxed, dated 3/17/09 from counsel to the Appeals Council and attaching a letter of the same date from counsel to the Appeals Council which in turn *purports* to attach the medical records of Dr. Haller III dated 3/11/09 (doc. 8-4); a printer/fax/copier/scanner record showing five pages faxed and *attaching* the Social Security Disability Questionnaire dated March 11, 2009 and signed by Dr. Haller, III (doc. 8-5); an eleven-page fax transmission information sheet dated 5/13/09 and attaching a letter from counsel to the Appeals Council of that same date *purporting* to attach medical records from Quality of Life dated 5/31/06, 6/9/06, and 1/20/09 (doc. 8-6); an eleven-page fax transmission information sheet from counsel to the Appeals Council and dated 5/29/09 attaching a letter from counsel to the Appeals Council of that same date *purporting* to attach medical records from Gadsden Orthopaedic Associates dated 3/16/09 - 5/7/09 (doc. 8-7); the actual medical records from Gadsden Orthopaedic Associates dated 3/16/09-5/7/09 (doc. 8-8); a six-page fax transmission information sheet dated 6/2/09 from counsel to the Appeals Council attaching a letter dated June 1, 2009 from counsel which in turn *purports* to attach records from CED Mental Health dated 4/27/09-5/19/09 but with no records (doc. 8-9).  On March 11, 2010, this court denied that motion.

On January 25, 2011, the claimant filed a second motion to remand, this one under sentence six, to consider the impact of the favorable decision the Commissioner issued in

19

claimant's separate action for social security benefits together with records attached to the March 2010 motion to remand. (Doc. 15).  This court will address that motion in this opinion.

## VI. DISCUSSION

The first matter that this court must address is whether it should grant claimant's requests for remand based on evidence submitted to the Appeals Court and listed in the Administrative Record, and further, evidence submitted to this court and *not* listed in the Administrative Record. Section 405(g) of 42 U.S.C. permits a district court to remand a Social Security matter to the Commissioner by using one of two methods.  The first and more frequently used method is called a "fourth sentence remand" because language in the fourth sentence of 405(g) gives the federal court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The second method, called a "sixth sentence remand" because it focuses on the sixth sentence of the same section, gives the district court authority to remand for the taking of additional evidence not currently part of the Administrative Record, upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

Claimant requests remands based on both methods.

## A.  Request for Remand under Sentence Four Based on Submissions to Appeals Council

Claimant's first argument is that this court should remand the case to the Appeals Council pursuant to sentence four because the Appeals Council failed to adequately consider the new evidence submitted to it after the hearing and decision of the ALJ.  The claimant requests a remand and contends that if the new evidence were properly considered, review would have been

granted because the evidence would likely have changed the ALJ's opinion. The Commissioner responds that denial of review by the Appeals Council is proper because it considered the new evidence submitted up to a point well after the deadline and concluded that nothing within the newly submitted evidence would change the ALJ's decision. Further, he argues that the additional evidence submitted to the Appeals Council and not considered was late and, in any event, was not material and chronologically relevant. The Commissioner argues that the decision of the ALJ should be upheld because it is still supported by substantial evidence.

A claimant is generally allowed to submit new evidence at each stage of the administrative process. *See* 20 C.F.R. § 404.900(b). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Comm'r of Social Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing § 404.970(b)). Evidence is "material" when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Milano v. Bowen,* 809 F.2d 763, 766 (11th Cir. 1987). To be "chronologically relevant," the material must relate to the period *on or before the date of the ALJ's hearing decision*. 20 C.F.R. § 404.970(b). However, the Appeals Council has no obligation to consider "new" evidence that was not timely and properly submitted. To be timely, evidence "should be submitted with [claimant's] request for review," which must be filed within 60 days of the date claimant receives notice of the hearing decision or within the extension of time granted by the Appeals Council upon written request. 20 C.F.R. § 404.968.

"[A] decision of the Appeals Council to deny review after refusing to consider new

evidence is part of the 'final decision' of the Commissioner subject to judicial review under sentence four of section 405(g)." *Ingram,* 496 F.3d at 1265.

1.  Newly Submitted Documents *NOT Listed* in the Appeals Council Record

In this case, the Appeals Council denied review by stating, "we considered the contentions raised by your representative[,] . . . as well as the additional evidence listed on the enclosed Order of the Appeals Council, but found that this information does not provide a basis for changing the [ALJ]'s decision." (R. 2).  The "additional evidence listed on the enclosed Order of the Appeals Council" included all evidence submitted up to the point of the Appeals Council decision *except* (1) the November 14, 2008 letter brief from claimant's counsel (but did include Dr. Wilson's evaluation attached to the letter); (2) claimant's counsel's May 29, 2009 letter with attached March 16-May 7, 2009 medical records of Gadsden Orthopedic Associates; and (3) the June 2, 2009 letter from claimant's counsel with attached April and May 2009 mental health clinic records.  The court will first determine whether the Appeals Court erred in failing to consider these *excepted* records.

As a preliminary matter, the court notes that the only timely submission to the Appeals Council occurred on November 14, 2008: the letter brief attaching Dr. Wilson's October 20, 2008 psychological evaluation of claimant.  The letter from the Appeals Council acknowledging the request for review gave claimant a deadline of November 14, 2008, and this submission met that deadline.  The November 2008 submission also met the deadline set in regulation 20 C.F.R § 404.970(b): 60 days from notice of the hearing decision.  The hearing decision occurred on September 30, 2008, and thus, the submission occurred well before the deadline of late November or early December, 2008.  Therefore, the only *timely* submission that was not listed in the record

22

was the October 2008 letter brief.

The letter brief contained counsel's legal *argument* but was not *evidence* itself.   For the most part, the letter cited cases and quoted from the medical evidence of record, the hearing transcript, and the social security listings, so none of that information represents *new* information, much less *new evidence*.  The letter brief quoted from Dr. Wilson's *new* evaluation, which was attached to the letter but, unlike the letter brief, was actually included in the list of evidence considered. Therefore, the only *new evidence* to which the letter brief referred was indeed *included* in the list of documents the Appeal Council considered.  The court cannot find any legal authority to support claimant's argument that the Appeals Council erred in failing to place counsel's letter brief in the Record, and claimant provides none.  The court finds no error in the failure to include the letter brief in the evidentiary listing at the Appeals Council level.  In any event, the court notes that the Appeals Council stated that it "considered the contentions raised by your representative."  (R. 1).

Although the Appeals Council had no obligation to consider the subsequent submissions, it continued to accept submissions through mid May, 2009, *over five months after the deadline*. However, "no good deed goes unpunished," and the claimant now complains that the Council did not also consider even later submissions.   The other submissions to the Appeals Council *not* listed as evidence were submitted at the end of May and early June of 2009, approximately six months after the deadline.   This court rejects claimant's argument that the Appeals Council erred in failing to include in the Record all such late submissions; it finds that the Appeals Council had no obligation to consider late submissions.   Indeed, common sense dictates that the court enforce such submission deadlines; any other approach could result in cases that last forever and never

23

become final, because claimants could continue to see doctors and would continue to submit new medical evidence for the record *ad infinitum*.  To avoid this problem, the Eleventh Circuit has upheld the submission deadline, finding that evidence untimely presented to the Appeals Council, and not considered by it, is properly treated as "new" evidence at the district court level and evaluated under sentence six.  *Milano v. Bowen*, 809 F.2d 763, 766-67 (11th Cir. 1987) (ordering a sentence *six* remand based on evidence submitted to the Appeals Court one day after the deadline, and thus, first properly submitted to the district court).  Following that wise guidance, this court will enforce the deadline.  It finds that the Appeals Council did not err in failing to consider the late submissions of May and June 2009, and it treats that late-submitted evidence, which was not listed in the Record at the Appeals Council level, as "new" evidence first submitted at the district court level.  The court will discuss this evidence further under the section analyzing the propriety of remand pursuant to sentence six.

2. Newly Submitted Documents *Listed* in the Appeals Council Record

The court next addresses whether the Appeals Council erred in refusing to grant review based on the evidence listed as considered at that level. As noted previously,  "[t]he Appeals Council must consider properly submitted new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, finding, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at 1261.

The court has reviewed the new evidence submitted to the Appeals Council and listed in the Administrative Record.  Some of the evidence is indeed cumulative, immaterial, and chronologically irrelevant, as the Commissioner asserts.  However, some of it is proper for consideration.

24

For example, the October 20, 2008 psychological evaluation of claimant by licensed

psychologist David Wilson, while admittedly dated shortly after the ALJ's decision of September

30, 2008, was performed so close to the relevant time period that it provides a potentially helpful

insight into the claimant's mental abilities during the relevant time period.  In connection with this

evaluation, claimant took a battery of new tests.  The results of those tests list as follows: WAIS

III - verbal IQ of 65, performance IQ of 67; full scale IQ of 63 supporting a diagnosis of mild

mental retardation with poor performance in all areas with very poor performance in many;

Weschler Individual Achievement Test - standard score of 61 and a grade equivalent rating of

second grade, sixth month.

These test scores provide new, non-cumulative information that support claimant's

argument that he meets the 12.05C listing for mental retardation.  Listing 12.05 provides in

pertinent part:

> *Mental retardation:* Mental retardation refers to significantly subaverage
> general intellectual functioning with deficits in adaptive functioning
> initially manifested during the developmental period, i.e, the evidence
> demonstrates or supports onset of the impairment before age 22.  The
> required level of severity of this disorder is met when the requirements in
> A, B, C, or D are satisfied.
> ***
> C.  A valid verbal, performance, or full scale IQ of 60-70 and a physical or
> other mental impairment imposing an additional and significant work-
> related limitation of function.

Claimant's full scale IQ score of 63 falls within the required 60-70 range.  The test scores

also support the previous findings of agency consultants related to claimant's mental deficits:

disability examiner Dr. Born's  May 2006 "possible" diagnosis of mild mental retardation, and

clinical psychologist Nichols's June 2006 diagnosis of "probable borderline intellectual

functioning," which, although not a diagnosis of mental retardation, does acknowledge mental

deficits.  (R. 300, 304).   Therefore, although Dr. Wilson evaluated claimant in October of 2008,

the consistency between the 2008 findings and those in 2006 indicate that claimant's mental

deficits in October 2008 did not exist as a result of some new event, but instead, extended back

into the relevant period.   Indeed, the nature of a mental retardation diagnosis is that it *must by*

*definition* manifest itself before age 22, and thus, in the instant case, must have been present in

the relevant time period.

Despite this consistency, claimant had received no evaluation under listing 12.05 for

mental retardation; neither the opinion of the ALJ nor the Psychiatric Review Technique

performed by an agency consultant, Dr. Rankart, addressed listing 12.05.  (R. 18-19; 312).

Perhaps one reason that Dr. Rankart's PRT did not assess claimant under listing 12.05 is that he

had incorrect or incomplete information about claimant's educational history.  His notes say that

claimant did not attend special education classes, but other information in the record, such as

claimant's hearing testimony and the agency psychological consulting examination, conflicts

with Rankert's notes and states, as previously noted, that he did participate in special education

programs throughout his schooling and dropped out of school in ninth or tenth grade.  (R. 51,

298, 320, 555).   This information about his placement in special education is significant to an

evaluation under 12.05, because the mental retardation listing requires manifestation before age

22, and a traditional consideration in addressing the issue of childhood manifestation is whether

the claimant was placed in special education classes.   *See, e.g,* cases noting whether claimant

had participated in special education classes as part of its 12.05 listing analysis:  *Ingram,* 496

F.3d at 1260*;  Lowery v. Sullivan*, 979 F.2d 835, 838 (11th Cir. 1992). Claimant's placement in

special education classes would be one factor supporting the early manifestation required by 12.05. In any event, the new evidence contained in Dr. Wilson's October 2008 evaluation provides specific testing results that would support an evaluation under listing 12.05.

Further, Dr. Wilson provided a diagnosis for claimant of "severe" recurrent major depression and generalized anxiety disorder, with a GAF score of 45, indicative of moderately severe restrictions in occupational and/or social functioning. Dr. Wilson's notes record a history of self-mutilation through cutting; restricted affect, being "depressed all the time," the feeling that "getting help is a waste of time," trouble sleeping, low appetite, low energy, and continual thoughts of suicide. (R. 501-02). The finding of severe depression was somewhat consistent with Dr. Nichols's 2006 diagnosis of depressive disorder, although she did opine that his depression would likely improve with treatment; and with Dr. Born's 2006 finding that claimant was depressed and his "biggest problems are in the realm of psychiatry." (R. 300-01, 302-04). Dr. Wilson's finding of severe depression is also consistent with other "new" records from the CED Mental Health Center submitted for the first time to the Appeals Council but dating from early 2007 through 2008 , diagnosing him as bipolar and depressed, and noting moodiness, self-mutilation activity, and thoughts of suicide "to escape the frustration" (R. 552-57). A therapist made the initial diagnosis and then a medical doctor or licensed psychologist concurred with that diagnosis. (R. 558). Claimant's discharge summary dated February 14, 2008 and submitted to the Appeals Council listed claimant's current problem as "Depression, severe situational." (R. 487). The new records from Dr. Wilson and CED Mental Health could support the required finding under Listing 12.05 for the existence of "other mental impairment imposing an additional and significant work-related limitation of function" and also, support a finding that the

27

severity of his mental problems also existed during the relevant period.

Similarly, the specific testing results in Dr. Wilson's report as well as his diagnoses of

claimant could also affect the evaluation of claimant under listing 12.04 for affective disorders.

Listing 12.04 provides in relevant part:

> *Affective Disorders:* Characterized by a disturbance of mood,
> accompanied by a full or partial manic or depressive syndrome.
> ***
> The required level of severity for these disorders is met when the
> requirements in both A and B are satisfied, or when the requirements
> in C are satisfied.
>
> A. Medically documented persistence, either continuous or
> intermittent, of one of the following:
> 1.  Depressive syndrome characterized by at least four of the
> following:
> a.   Anhedonia or pervasive loss of interest in almost all activities; or
> b.  Appetite disturbance; or
> c.  Sleep disturbance; or
> d.  Psychomotor agitation or retardation; or
> e.  Decreased energy; or
> f.  Feelings of guilt or worthlessness; or
> g.  Difficulty concentrating or thinking; or
> h.  Thoughts of suicide; or
> i.  Hallucinations, delusions, or paranoid thinking; or
>
> 2.  Manic syndrome . . .;
>
> 3.  Bipolar syndrome. . .;
>
> AND
>
> B.  Resulting in at least two of the following:
> 1.  Marked restriction in activities of daily living; or
> 2.  Marked difficulties in maintaining social functioning; or
> 3.  Marked difficulties in maintaining concentration, persistence, or
> pace; or
> 4.  Repeated episodes of decompensation, each of extended duration.

The ALJ evaluated claimant under Listing 12.04 as having only moderate difficulties with social

functioning and with maintaining concentration, persistence, or pace.  However, the test results, diagnoses, and clinical notes of Dr. Wilson could all materially affect the evaluation of claimant's subjective testimony about the severity of his depression and the intensity of his difficulties with social functioning and maintaining concentration, persistence, or pace.  Further, the CED Mental Health Clinic notes tie many of those symptoms to the relevant time period.

In any event, whether claimant's mental condition meets Listing 12.04 and 12.05, the new evidence is non-cumulative, material, and relevant to the pain standard evaluation of claimant's subjective testimony about the severity of his problems and his ability to work despite those problems; his subjective claims require evaluation in light of the new evidence.

The court finds that the new evidence submitted, and in particular Dr. Wilson's October 8, 2008 report and the 2007 and early 2008 CED Mental Health Center records, was non-cumulative, material, and chronologically relevant. Therefore, this court finds that the Appeals Council erred in failing to adequately consider the additional evidence submitted and in denying review despite that new evidence.  The court will reverse the decision and remand it to the Appeals Council for further proceedings consistent with this opinion.

Because of the court's ruling on the issue of whether to remand the case pursuant to sentence four, the court need not address the issues related to the merits of this action.  However, it will address claimant's  argument regarding the appropriateness of remand under sentence *six* in addition to sentence *four*, to ensure that the Appeals Council considers all appropriate evidence upon remand.

**B.  Request for Remand under Sentence 6 Based on Information First Submitted at the District Court Level**

In his second motion to remand, claimant asserts that this court should remand this case to the Appeals Council under sentence six to consider new evidence submitted at the district court level. (Doc. 15).   As noted previously, sentence six "provides a federal court the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence in a prior proceeding.'" *Ingram*, 496 F.3d at 1261 (quoting section 405(g) sentence 6).   The Eleventh Circuit has found that evaluation of motions to remand under sentence six is appropriate to consider "new evidence that the Commissioner did not have an opportunity to consider;" that is, evidence never submitted at any level and also evidence that was not considered by the Appeals Council because it was untimely submitted.  *Ingram*, 496 F.3d at 1269.  Evidence considered under sentence six cannot include evidence considered by the Appeals Council and incorporated into the administrative record.  *Id.*  Therefore, in the instant case, the only evidence that can possibly fall under sentence six consideration is the evidence submitted to the Appeals Council in late May and June 2009, and the September 2009 disability decision.

1.  May and June 2009 Submissions

a.  *CED Mental Health Clinic Records dated May and June 2009*

The June 2, 2009 submission letter *refers* to CED Mental Health clinic records dated May and June of 2009, but neither the Administrative Record nor the district court Record contains the actual records.  Obviously, this court cannot consider the materiality of  "new evidence" that has not actually been submitted and is not part of the Record for review.

   b.  *Gadsden Orthopaedic Associates records dated 3/16/09-5/7/09*

   The court has reviewed and considered the records from Gadsden Orthopaedic

Associates/Dr. Haller dated 3/16/09-5/7/09, which were apparently first submitted to the Appeals

Council, attached to May 29, 2009 transmittal letter, but not considered by the Appeals Court or

listed in the Administrative Record.  Claimant next submitted these records to this court, attached

to the first motion to remand, and thus, these records are available for review for the first time in

this court.  (Doc. 8-7 & 8-8).  The question before this court is whether claimant was "entitled to

benefits during a specific period of time, which period was necessarily prior to the date of the

ALJ's decision."  *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *see* § 404.976.  The

ALJ's decision in the instant case was dated September 30, 2008.

   The 2009 orthopaedic records at issue relate to claimant's 2009 right patellar fracture and

surgery to repair it, as well as to an infection and septic arthritis that occurred after surgery.  The

court finds that these records are not material and relevant to the period at issue in this appeal,

which is between the alleged onset date of disability, October 28, 2004, and the date of the ALJ's

hearing decision, September 30, 2008.  These orthopaedic records are dated *after* the relevant time

period,  and evaluate claimant at a time *after* the relevant dates and *after* a new fracture, operation,

and infection that occurred *after* the relevant dates.   Therefore, the court need not consider the

2009 orthopaedic records.

   2.  Favorable ALJ Disability Decision

   In a subsequent Social Security disability decision dated September 8, 2009, and attached

to claimant's second motion to remand (doc. 15), the ALJ found that claimant was disabled as of

October 1, 2008, a period beginning immediately *after* the September 30, 2008 unfavorable

31

decision at issue in this case.  Claimant asserts that this decision is new evidence establishing good cause for remand pursuant to sentence six.

The court notes that the ALJ in claimant's subsequent Social Security suit based his decision on *additional* severe impairments (for example, right patella fracture requiring surgeries; diabetes mellitus, cervical spondylosis, and generalized anxiety disorder) that the ALJ in the instant suit did not find.  The subsequent opinion relies to a significant degree on the new evidence of claimant's *physical limitations in 2009*, which this court has found to be immaterial to the instant matter.  For example, the ALJ focuses heavily, although not exclusively, on the *2009* fracture to claimant's right patella resulting in surgery and surgical complications, records of events dating *after* the ALJ's decision in the instant case.  (Doc. 15, at 8-12).

The court acknowledges, however, that the ALJ did not set the onset date of disability at the beginning of  2009 to coincide with the patellar injury and surgery.  Instead, he set it in October of 2008, after the ALJ's September decision in the instant case but presumably coinciding with Dr. Wilson's October 2008 mental evaluation. That mental evaluation does not reflect a *new* mental impairment arising between September 2008 and October 2008.  Rather, it reflects diagnoses of mental retardation and depression that extend back into the relevant time period, as discussed in the section addressing the sentence four remand.  In light of its previous ruling already requiring remand, the court further finds that remand is appropriate pursuant to sentence six to consider the subsequent favorable ALJ decision, because that decision is "new and non-cumulative," material evidence and, combined with the other evidence of mental limitations, "a reasonable probability [exists] that it would change the administrative result," and further, because good cause exists for the "failure to submit [it] at the administrative level." *See Calder v. Bowen*,

32

791 F.2d 872, 877 (11th Cir. 1986) (stating that test for remand under sentence six).  Therefore,

the motion to remand pursuant to sentence six is due to be granted in part; specifically, the court

grants it as to the subsequent favorable disability opinion dated September of 2009.


## V.  CONCLUSION

For the reasons stated above, the court finds that the request for remand pursuant to

sentence four is due to be GRANTED.  Further, the court finds that the motion to remand under

sentence six (doc. 15) is due to be GRANTED.  The court will enter a separate order consistent

with this opinion, REVERSING and REMANDING this case for proceedings consistent with this

decision.

Dated this 20th day of April, 2011.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE